## MARTIN v. POPE & SON.

1. A factor, to whom goods are consigned for sale, is entitled to a lien upon them and their proceeds, for advances, and commissions consequent upon their reception, safe-keeping and sale, and for what may be due him upon *a general balance of accounts growing out of similar dealings.*

2. Where a factor makes advances, in the absence of a special agreement, the inference is, that they were made upon the joint credit of the personal security of the principal, and of his goods and money that may come to hand; and he may renounce his lien without affecting his remedy against the person, and *vice versa.*

3. Where a factor sells goods, and appropriates the proceeds to his account against the principal without objection by the latter, the surety of the principal for the payment of a demand of equal dignity to the factor, when sued by the latter, cannot object that the appropriation was not so made as first to relieve him from liability.

4. A factor credited his principal with the proceeds of goods sold, afterwards paid him a part thereof, then sold for him other goods to a much greater amount: *Held*, that a surety of the principal, in an action by the factor, could not claim a deduction from his liability for the sum credited and afterwards paid over.

5. An indulgence *gratuitously* granted by a creditor to the principal debtor, will not operate a discharge of the surety.

WRIT of error to the Circuit Court of Mobile.

This was an action of assumpsit at the suit of the defendants in error against the plaintiff, on a promissory note made by him, together with Elihu Moffitt and James R. Horn, by which they promised to pay to the plaintiffs below, the sum of two thousand two hundred and twenty-five dollars, ten months after date, and dated the 23d March, 1839. The cause was tried on the general issue, and a verdict returned in favor of the plaintiffs, for the sum of one thousand and fifty-three dollars and thirty cents, on which judgment was rendered.

On the trial the defendant excepted to the ruling of the court, both in charging and in refusing to charge the jury. The material facts of the case are stated in the bill of exceptions, substantially as follows: The plaintiffs were commission merchants of the city of Mobile; Moffitt, who was the principal in the note, was a cotton planter residing in the interior of this State, and in the habit of sending them his crop to sell. On the 23d of March, 1839, he obtained from them $2,000 in cash, for which he agreed to pay 5 per cent. the usual commissions for advancing, and in addition, interest at the rate of 8. per cent. *per annum*. To secure the payment of these several amounts, Moffitt made the note in suit, with the defendant and Horn as his sureties. It was the understanding between plaintiffs and Moffitt, that the latter was to ship cotton to the former, though nothing was said about selling it, and applying the proceeds to the note. In February and March, 1840, Moffitt sent to the plaintiff his cotton crop of 1839, amounting to 113 bales, all of which were sold for the nett sum

of nineteen hundred and nine dollars and sixty-three cents, and on the 17th of June, 1840, they sent him the account of sales, which does not show whether, and how they had appropriated the proceeds   In answer to a previous application of Moffitt, not to sue for any balance he might be due the plaintiffs, they say, "we shall be easy about the balance you owe us until next season, when we shall expect it."

Moffitt became indebted to the plaintiffs subsequent to March, 1839, as follows, viz: on the 30th April, 1839, for bagging, rope and twine, $260 81—29th of November, do. $80 16, for do.— 30th December, do. $148 40, for do.   On the 21st March, 1840, $306, for the hire of negroes, and on the same day, $124 50, being the nett proceeds of four bales of Moffitt's crop of cotton, which had been previously placed to his credit by the plaintiffs.— The aggregate amount of these several sums, the plaintiffs claim the right to retain from the proceeds of Moffitt's cotton, before applying it to the extinguishment of the note in suit.   It was proved that money due for negro hire, was not connected with the business of a commission merchant.

The judge charged the jury, that the law relative to a pledge, and the liens which attach to property held in that way, were wholly inapplicable to this case: that the plaintiffs had the right to apply the money received for the cotton, to any item in their account, at any time, if Moffitt, their principal, had given no direction in respect to it.   *Further*, the indulgence given by the plaintiffs to Moffitt, would not discharge his security, unless it was upon a contract founded on a valuable consideration.

The defendant, by his counsel, prayed the court to charge the jury, 1. If the plaintiffs received Moffitt's cotton as commission merchants, and he was indebted to them at that time, in an account connected with and growing out of their trade as such, then they would be considered as holding the cotton in pledge for the satisfaction of their account.   2. If the indebtedness of Moffitt to the plaintiffs, consisted of several items, contracted at different times, but all connected with their trade and business, then the money received upon the sale of the cotton, after deducting charges for commissions, &c, shall be applied to their payment according to the order of time in which they were respectively contracted; or if not thus to be extinguished, then according to the time in which the items respectively became due.   3. If the cash

for which the note in suit was given, was advanced by the plaintiffs as the commission merchants of Moffitt, the note operated as a lien upon the cotton sold by them, notwithstanding the defendant and Horn were sureties for its payment, and if the oldest demand of the plaintiffs against Moffitt, it should be first paid from the money in their hands.   4. If the charge for negro hire was not connected with plaintiff's trade as commission merchants, then the money received for the cotton could not be applied to its payment until the note was satisfied.   5. That the payment to Moffitt of $124 50, part of the proceeds of the cotton, with which the plaintiffs had previously credited him, discharged the defendant and his co-surety from the payment of the note *pro tanto*.   6. If the plaintiffs agreed to waite with Moffitt until next season for the balance of what he owed them, with the understanding that he was still to employ them as commission merchants, that would form such a contract for indulgence as would discharge the defendant.   7. If the money now sought to be recovered, was cash advanced by the plaintiffs as commission merchants, to Moffitt, who at that time owed them nothing, and Moffitt sent them his cotton to sell, the application of money received from the sale thereof, to debts subsequently contracted, would be a fraud upon the defendant as a surety of Moffitt, and would *operate as a discharge* of the note *pro tanto;* which prayer for instruction was overruled *in toto*.

A. F. HOPKINS, for the plaintiff in error.   The understanding between Messrs Pope & Son and Moffitt, that the latter should ship them his crop of cotton, amounted to a contract which gave a lien for the payment of the money, which the note was intended to secure.   That no subsequent advances or dealings between the parties, could in any manner interfere with that lien, or relieve the plaintiffs from thus appropriating the proceeds of the cotton to the defendant's prejudice.   The note was prior in point of time, to the other items of the plaintiffs' account, and should be first satisfied.   [Paley on Agency, 116–7, 123; 1 Powell on Mort. 558; 1 Story's Eq. 108, 320, 322; 1 Bos. & P. Rep. 563–9; 1 Har. & J. Rep. 465, 754; 16 Peter's Rep. 121; 2 Johns. Ch. Rep. 554; 17 Johns. Rep. 384; 11 Wheat. Rep. 59; 2 Johns. Ch. Rep. 603; 1 Powell on Mort. 434, n. 435, n. 558; 2 Har. & J. Rep. 492; 11 Mass. Rep. 300; 3 T. Rep. 123.]

To show that Pope had discharged the defendant by the indulgence to Moffitt; that they had no right to retain for the hire of negroes and the proceeds of the four bags of cotton paid Moffitt, the counsel cited Paley on Agency, 116–7, 122; 3 Bos. & P. Rep. 485; 1 Story's Eq. 308; 3 B. & Cresw. Rep. 605; 3 T. Rep. 123; 6 id. 258.

J. A. CAMPBELL, for the defendants. A factor has a lien for his general account; and it may be conceded that it is doubtful whether an outstanding independent claim will authorise him to retain the property of his principal, or its proceeds. [3 Bos. & P. Rep. 495.] That a factor may hold the possession of property upon which he has made advances, and control the proceeds after a sale to reimburse himself for a general balance growing out of the business, cannot be denied. But he is not bound to exert it; whether he will do so or not, must depend upon his own volition; and no third person, although he may be a surety for the principal, can complain that its exercise has been omitted. [4 Johns. Rep. 112.] This lien is analagous to the right of set-off, and authorises the factor to hold the property or fund, as against an adverse claimant until his demand is satisfied; it is called into action, when a right is set up by a third person.

Moffitt never directed Pope & Son to make any particular application of the monies arising from the sale of his cotton, and it was consequently competent for the latter to apply them to either of their demands. They might have paid them over to Moffitt, if so inclined; or even have set-off against an action brought by him the sum due for the hire of negroes. The case in 16 Peters' Rep. 121, is clearly against the plaintiff—it shows that the commission merchant is bound to appropriate the proceeds of cotton to debts due at the time it is sold, and this, although the particular debt may not have been contracted in the course of his usual business. Unless it be by a distinct agreement, the surety can have no control over the manner in which the principal shall make his payments. [1 Stark. Rep. 101; 11 Serg't & R. Rep. 34. See cases in 3 Peters' Dig. 201; 10 Pick. Rep. 129; 2 id. 581, 612; 12 Wheat. 505, 554.]

COLLIER, C. J.—It is not pretended that there was a special contract between the plaintiffs and Moffitt, in respect to their

transactions, which would vary the duties and liabilities of the for-mer as the factors of the latter. We must then consider the case in reference to the principles of law applicable to such agents when dealing with their principals.

The engagement of a factor who undertakes the sale of goods or merchandize, for a compensation, is, that he will faithfully dispose of the same, with a proper regard to the advices of his principal, and honestly account for the proceeds. He is entitled to a lien, not only upon the goods themselves, for advances, and for commissions consequent upon their proceeds, and for what may be due him upon *a general balance of accounts growing out of similar dealings.* This lien arises upon an agreement which the law implies in the absence of any express stipulation upon the subject. [Paley's Ag. 127-8-9, 142-7; Story's Ag. 421, 435.]

In Houghton, et al. v. Matthews, et al. [3 Bos. & Pul. Rep. 485,] it was decided that the demand for which the factor claimed a lien, must be connected with, and constitute a part of his deal-ings as such, with his principal; for if it was a species of debt for-eign to that relation, or accruing before its commencement, the lien would not be enforced. [Paley's Ag. 135-6-7; Story's Ag. 387-8-9.]

The correctness of these principles is conceded by both par-ties, but it is argued for the defendant, that the plaintiffs had a lien upon the cotton consigned to them by Moffitt, and since its sale upon the proceeds; that they cannot relinquish their lien and resort to an action against the sureties of their principal, but must appropriate the money received by them to the payment of their account as factors, in the order in which the advances were made, or in which the respective sums charged, became payable.

The general lien of factors does not depend upon any express contract, but rests upon its manifest tendency to aid the interests of trade and commerce, and to promote confidence and a liberal spirit on the part of factors in respect to advances to their prin-cipals. It is deemed to exist in all cases, until the contrary pre-sumption is clearly established. [Story's Ag. 388-9; Paley's Ag. 127-8.] And where a factor makes advances, independent of an actual agreement to that effect, the legal inference is, that they were made upon the joint credit of the personal security of the principal, and of his goods and money that might come to hand. This being the case, the factor may relinquish his lien on the lat-

ter without at all affecting his personal remedy; so he may re-
nounce his right to resort to the person, and look alone to his lien
for reimbursement. [Burrell v. Phillips, 1 Gall. Rep. 360; Piesch
v. Dickson, 1 Mason's Rep. 9.] It is then a right of which the
factor or his representatives may avail themselves; but where
there is no contract other than that which is implied, one who
has become a surety of the principal to refund advances made to
him, cannot elect for the factor, and force him (at least at law,) to
assert his lien upon the goods or money of the principal.

The case of Brander & McKenna v. Phillips, et al. [16 Peter's
Rep. 121,] which was cited for the plaintiff in error, bears but lit-
tle resemblace to that now before the court. In that case the
plaintiffs were the factors of Phillips & Co., sold cotton for them
for two and a half per cent. commissions, and charged the same
for advances. In August, 1834, Phillips & Co. were indebted to
the plaintiffs in the sum of $1315 57, for advances. On the 15th
of the same month, the agent of the plaintiffs agreed to advance
Phillips the sum of $8,000 on bills to be drawn between the 20th
of April and 31st July, 1835, by them, and any two of six persons
named; among whom were R. H. & N. T., two of the defendants.
Between the 15th of August, 1834, and the 31st July, 1835, seve-
ral shipments of cotton were made to the plaintiffs by Phillips &
Co., and several bills were drawn by them, some jointly with R.
H. and N. T., and others without them; all of which were ac-
cepted by the plaintiffs. The bills and advances amounted to
$29,795 65: and the proceeds of the cotton amounted to $22,-
460 43. The proceeds of the cotton were applied to the bills
drawn by Phillips & Co. to the exclusion of those drawn by them
jointly with R. H. and N. T.; and the question was, whether if
the plaintiffs had sufficient funds of Phillips & Co. in their hands,
when these latter bills became due to pay them, they were not
bound to pay them, instead of retaining it for the payment of those
which subsequently matured. The court said, "the application of
payments by the creditor, where no direction is given by the
debtor, has no relation to the present case. Had the bills become
payable at the same time, on acceptances made on the same
day, the plaintiffs might have insisted on applying the funds in
their hands to the payment of the notes without securities. But
this would have been a very different case from the one now be-
fore us. After having accepted the bill under consideration, pay-

able at a time stated, the plaintiffs accepted other bills, payable at a more remote period.

Now, the contract by the acceptors was, that they would pay these bills as they respectively became due. And this they were bound to do so long as the funds of the consignors in their hands remained unexhausted. A bill became extinguished as soon as it was paid by the plaintiffs with the funds of Phillips and company. And this principle applies as strongly to those bills signed by the accommodation drawers, as others."

Again: "The plaintiffs, by appropriating the proceeds of the cotton to the payment of future liabilities, have violated their contract, endeavored to defeat the just reliance of the sureties, and charge them with the payment of the bills which they guarantied. This the plaintiffs cannot do. It would be a great hardship, if not a fraud on the sureties. No lien can be regarded or enforced under such circumstances. The lien of a factor depends upon legal principles, founded on equitable considerations, and can be held valid on no other grounds."

This case merely determines, that the acceptor of bills is bound to pay them at maturity; that if in funds of the drawer. he should use them for that purpose; and where they became payable at different times, he cannot use his own funds to pay those that first mature, and pay those subsequently falling, with the money of the drawers, so as to entitle him to recover the amount of the former, of persons who joined as sureties in drawing them. There, the factors, by their acceptance, came under obligations to pay money at an appointed day, and being in funds of the persons for whom they had undertaken, it was their duty to appropriate them. Here, they had entered into no such engagement. They had merely advanced money to, and had allowed one of their customers to become indebted to them, by furnishing him goods, &c.; and this without any contract, though doubtless in the expectation that he would send them cotton. The several sums in which he was indebted, must be considered as constituting his liability to them, and stand upon an equal footing so far as the present case is concerned. This conclusion, as it respects the note in question, results from the absence of any contract varying the rights and obligations of the sureties; and in regard to the charge for negro hire, it is immaterial whether it arises out of the plaintiffs' dealings, as factors, with Moffitt, and could only be material,

if they were asserting a lien upon the cotton or its proceeds. But the question of the right of lien, or the duty of the factors to exert it, cannot be raised in this case. Moffitt's cotton has been sold by them, and its proceeds appropriated *pro tanto* to extinguish his indebtedness, without any objection, of which the record informs us, either by himself or his representatives. It is, then, the case of a creditor paying money to his debtor without any specific direction as to its application.

It is laid down generally, that where money is paid by a debtor to a creditor, who has several demands against him, without directing how it shall be applied, the creditor may apply it as he pleases. [Smith v. Scriven, 1 McC. Rep. —; Goddard v. Cox, 2 Strange's Rep. 1195. See also 2 East's Rep. 242.] In The Mayor, &c., of Alexandria, v. Pattern, et al., [4 Cranch's Rep. 317,] the court say, "It is a clear principle of law, that a person owing money on two several accounts, as upon bond and simple contract, may elect to apply his payments to which accounts he pleases; but if he fails to make the application, the election passes from him to the creditor. No principle is recollected which obliges the creditor to make this election immediately. After having made it, he is bound by it, but until he makes it, he is free to credit either the bond, or simple contract." To the same effect is The United States v. January & Patterson, [7 Cranch's Rep. 471.]

In Gwin, et ux. v. Whitaker, adm'r, [1 Har. & Johns. Rep. 754,] it was determined, that where one is indebted upon several accounts, and makes a payment, without directing its application, if both the securities carry interest, or neither bear interest, the creditor may apply it. So, if one is indebted on bond or mortgage, and simple contract, the law, in the absence of direction from the debtor, will apply a payment to the bond and mortgage. *Further*, it was said, that sometimes the fund, out of which the money arose, will direct the application; as where one, indebted on bond and on judgment, sells his land, and the purchaser pays a sum of money to the creditor without applying it, the law will apply it to the judgment, so as to exonerate the land.

In Alston's adm'r v. Contee's ex'r, [4 H. & Johns. Rep. 351,] a debtor made a payment to a creditor, who had two claims on open account, without directing its application: under the circum-

stances, the court thought the money should go in extinguishment of the oldest account. And in Bacon v. Brown, [1 Bibb's Rep. 334,] it was decided, that if the debtor does not apply a payment, the creditor may direct its application to any one of several demands where they are of equal dignity, parallel in their consequences, and charge upon the debtor. That equity would direct a payment to be applied to debts bearing interest; but the creditor cannot apply it to a demand not yet payable. [See also Heyward v. Lomax, 1 Vern. Rep. 24.] The inference from the facts recited in the record, is, that all the items composing the plaintiffs' account, were for money due them before they had sold all the cotton consigned them by Moffitt; as the last charge is dated on the 21st March, 1840, and the cotton was sold on the 17th of that month and in April following. Again; they are all of equal dignity as it respects priority of payment; and from the time the plaintiffs were entitled to be paid, they drew interest in the same manner, whether evidenced by writing or not.

As it respects the sum of one hundred and twenty-four 50-100 dollars, paid Moffitt by the plaintiffs, defendant cannot object that it should have been credited to Moffitt's account. And whether it had been thus previously credited or not, is wholly immaterial; for they subsequently sold for Moffitt between six and seven hundred dollars' worth of cotton, that was placed to his credit, which we have seen the plaintiffs might have paid over to him without affecting their claim against the defendant. The form in which the account is stated cannot prejudice either party: courts of justice will look at the substance of the thing.

The facts do not show that there was a valid agreement between the plaintiffs and Moffitt, by which the former was to extend the day of payment of the note in controversy; what the plaintiffs said to him was entirely gratuitous, and they could have put the note in suit at any time after its maturity.

Without extending this opinion, by a particular examination of the charges given and refused, it will be readily perceived from what has been said, that no error has been committed which is available for the defendant below. The judgment is consequently affirmed.